UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

FERNANDO MARTINEZ,

    Plaintiff,

v.

MIKE SCHULTZ *et al.*,

    Defendants.

CAUSE NO. 3:19-CV-146 DRL-MGG

## OPINION AND ORDER

Fernando Martinez, a prisoner without a lawyer, proceeds on claims against four defendants for restricting the exercise of his religion at Westville Correctional Facility. The defendants have moved for summary judgment on all claims. ECF 57. Mr. Martinez filed a response to that motion, and the defendants filed a reply. ECF 68, 69. The motion is ripe for ruling.

Summary judgment must be granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Not every dispute between the parties makes summary judgment inappropriate; "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id*. To determine whether a genuine issue of material fact exists, the court must construe all facts in the light most favorable to the non-moving party and draw all reasonable inferences

in that party's favor. *Ogden v. Atterholt*, 606 F.3d 355, 358 (7th Cir. 2010). However, a party opposing a properly supported summary judgment motion may not rely merely on allegations or denials in its own pleading, but rather must "marshal and present the court with the evidence she contends will prove her case." *Goodman v. Nat'l Sec. Agency, Inc.*, 621 F.3d 651, 654 (7th Cir. 2010).

BACKGROUND

The IDOC places limits on prisoners' attendance at group religious services to stop them from using the services to traffic contraband or engage in gang activity. ECF 57-2, ¶ 10. A prisoner declares a religion in the Offender Information System (OIS), and the IDOC can require that he only attend the service corresponding to that religion. ECF 57-2, ¶ 8; ECF 57-5 at 19. A prisoner can receive permission to try another religion's services for 30 days, but at the end of the 30 days, he has to pick which services he wants and change his designation accordingly. ECF 57-2, ¶ 10.

On September 18, 2018, the IDOC banned prisoners from possessing "sage, sweetgrass, cedar, and other herbs." ECF 57-3. The IDOC believed that herbs purportedly justified on religious grounds were being used and trafficked as drugs.[1] ECF 57-2, ¶ 5. Although prisoners could not keep their own herbs, the prison chaplains could use and distribute certain herbs during group services. *Id.*, ¶ 4; ECF 57-3.

---

[1] The prison staff was struggling to identify various kinds of "leafy vegetable matter," and could not always tell whether the substances were religious herbs or contraband. ECF 57-2, ¶ 5. In addition, sage undermined the prison's ability to test for drugs, because sage tested positive for synthetic marijuana with the prison's field test kit. *Id.*

2

At Westville, Mr. Martinez's listed religious preference was "Native American." *See* ECF 57-1. Although the IDOC recognizes this religious preference, Westville does not offer Native American religious services. ECF 68-1 at 10. Mr. Martinez wants to use four banned herbs – sage, osage, bitterroot, and cedar – for religious purposes. Mr. Martinez does not say how he would use the herbs, though the IDOC's description of the Native American religion indicates that certain sacred herbs are "burned in small portions, usually within a seashell or small non-metal bowl." ECF 68-1 at 18. Because he cannot possess the herbs individually and has no access to Native American services, he claims he does not have access to the herbs.

In January 2019, Mr. Martinez requested to be placed on the "count list" for a 30-day trial for Roman Catholic services. *See* ECF 57-4. The IDOC's religious handbook states that "[u]pon consultation with accredited representatives of both faith groups, a Native American offender who follows both traditional and a specific Christian denomination may be allowed to adhere to the minimum requirements of both faith groups." ECF 68-1 at 19. Mr. Martinez believed that if he attended Catholic services, he would be permitted to use the herbs, but he claims he was not. When the 30-day period expired, Mr. Martinez chose to retain the "Native American" designation. ECF 57-6. As of the time of briefing, he remained without access to the herbs.

## ANALYSIS

Mr. Martinez proceeds on two claims: (1) a claim for injunctive relief under the First Religious Land Use and Institutionalized Persons Act (RLUIPA) against the warden at Westville, permitting him to attend Catholic Mass and possess sage, osage, bitterroot

3

and cedar; and (2) a claim for money damages under the First Amendment against defendants Mike Schultz, Brian Blummer, and Marvin Walton, for preventing him from attending Catholic Mass and possessing the herbs. *See* ECF 10.

    A.    *RLUIPA.*

RLUIPA provides that "[n]o government shall impose . . . a substantial burden on the religious exercise of a person residing in or confined to an institution . . . unless the government demonstrates that imposition of the burden on that person – (1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000cc-1(a). Although this is an "exceptionally demanding" standard, the court must also consider that "prison officials are experts in running prisons and evaluating the likely effects of altering prison rules." *Holt v. Hobbs*, 574 U.S. 352, 364 (2015) (quoting *Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682, 728 (2014)). Nonetheless, "if a less restrictive means is available for the Government to achieve its goals, the Government must use it." *United States v. Playboy Entertainment Group, Inc.*, 529 U.S. 803, 815 (2000).

Mr. Martinez seeks an injunction permitting him to attend Catholic services because he was restricted from doing so after his trial period expired. The uncontested evidence indicates that he could attend Catholic services if he updated his religious designation, but he has chosen not to do so. *See* ECF 57-6, ECF 68-1 at 59. Instead, he wants to be able to list "Native American" as his religious preference while still attending

4

Catholic services[2], and says that the prison staff's refusal to oblige this request is tantamount to "proselytizing." But he presents no evidence that anyone is trying to change his beliefs.[3] He is being asked to declare a religion for the prison's records so the prison can be assured that he has a legitimate basis to attend services for that religion. Although he may dislike that requirement, he offers no evidence that it is a "substantial burden" on his religious practice, so the requirement does not violate RLUIPA. *See C.L. for Urb. Believers v. City of Chicago*, 342 F.3d 752, 760 (7th Cir. 2003) (a "substantial burden" is one that "render[s] religious exercise . . . effectively impracticable").

Mr. Martinez also wants to be allowed to possess the banned herbs for religious purposes. The warden concedes, for summary judgment purposes, that his inability to possess the herbs imposes a substantial burden on his religious practice. ECF 58 at 6-7. Mr. Martinez does not contest that the herbs were banned to prevent drug use and drug trafficking at the prison; in short, the restriction furthers a compelling government interest. *Cutter v. Wilkinson*, 544 U.S. 709, 723 (2005) (a prison's "necessary regulations and procedures to maintain good order, security and discipline" advance a compelling interest). Therefore, the restriction would be permissible under RLUIPA if it was the least restrictive means of furthering that interest.

---

[2] It appears Mr. Martinez pursued this relief because he believes Native American prisoners of Christian faith must have access to services for both groups.

[3] Mr. Martinez points to an email in which a prison officer reports telling him to change his "religious preference" – but it is clear from the context that the officer was referring to his "preference" listed in the prison records, not his actual religious beliefs. *See* ECF 68-1 at 59. No reasonable juror could construe the remark as proselytizing.

Viewing the evidence in the light most favorable to Mr. Martinez, the warden has not shown that banning all herbs was the least restrictive way to stop certain herbs from being used as drugs. The warden presented several justifications for the restriction:

- "[T]he IDOC was attempting to eliminate, or at least reduce, instances of drug trafficking and use" (ECF 57-2, ¶ 5);
- "The herb sage tested positive for [synthetic marijuana] with [the IDOC's] standard field test kit" (*id*.);
- "IDOC staff was having trouble identifying leafy vegetable matter during searches, and offenders were claiming the items were religious herbs" (*id*.)

On this record, it is not clear why the warden could not let Mr. Martinez use certain herbs under supervision. The herbs could be stored elsewhere in the prison and lent to Mr. Martinez with a supervisor present – just as they would be if Westville formally offered Native American services.[4] *See* ECF 57-3. To the extent there was any difficulty distinguishing sage, osage, bitterroot, or cedar from an illegal drug, that would let the prison confirm that the herbs were genuine. As for the issues with drug testing, although "sage test[s] positive" for synthetic marijuana, sage was explicitly permitted for supervised religious use by the IDOC[5]; it is unclear why Mr. Martinez could not receive

---

[4] The warden claims that although Mr. Martinez could not possess the herbs, he "still had the ability to perform certain rituals" with herbs because chaplains could use them at group services. ECF 58 at 7. It is not clear how that helps Mr. Martinez, because there were no Native American services at Westville, and he could only attend services for his own religion. *See* ECF 68-1 at 10, 59. The warden does not present evidence showing how Mr. Martinez can access the herbs given these restrictions.

[5] *See* ECF 57-3 ("Sage . . . may be secured under lock by Chaplains and issued for smudging or other ritual uses.")

the same accommodation. Regardless, a blanket ban on all herbs is not the least restrictive way to address issues specific to sage. The court does not assume that this solution is necessarily appropriate, but the record does not show why it would not be, so the warden is not entitled to summary judgment. *Schlemm v. Wall*, 784 F.3d 362, 365 (7th Cir. 2015) (RLUIPA requires the government "not merely to explain why it denied the exemption but to prove that denying the exemption is the least restrictive means") (citing *Holt*, 574 U.S. at 364).

One other point bears mentioning. The court doesn't consider whether the IDOC can lawfully limit a prisoner to only one type of religious service, because the absence of Native American services at Westville makes that issue moot here. But as the IDOC's own policies concede, there are circumstances in which a person can follow multiple religions. *See* ECF 68-1 at 19 ("[A] Native American offender who follows both a traditional and a specific Christian denomination may be allowed to adhere to the minimum requirements of both faith groups."). And the defendants have not (so far) disputed that their restrictions burden Mr. Martinez's legitimate religious practice. On this record, they must accommodate his right to practice both religions, even as they ask him to "declare" one or the other. For example, if Mr. Martinez does eventually switch his preference to "Catholic," it would not seem appropriate to deny him access to any religious herbs made available to other Native Americans at Westville.

B.   *First Amendment.*

Mr. Martinez also brings a First Amendment claim for money damages against defendants Mike Schultz, Brian Blummer, and Marvin Walton for preventing him from

attending Catholic Mass and possessing the herbs. Mr. Martinez does not explain exactly how each person was responsible for the alleged violation. The record indicates that Mr. Schultz was the chaplain at Westville who denied Mr. Martinez's request to continue attending Catholic services (*see* ECF 57-6). It is not clear how Mr. Blummer and Mr. Walton were involved. Nonetheless, the court makes no finding as to who was personally responsible for the alleged violation because the claim is dismissed on other grounds.

The Free Exercise Clause of the First Amendment "prohibits the state from imposing a substantial burden on a central religious belief or practice," *Kaufman v. Pugh*, 733 F.3d 692, 696 (7th Cir. 2013), but "the regulation is valid if it is reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 89 (1987). Unlike RLUIPA, the First Amendment does not require that government use the "least restrictive means" to achieve those interests. *Charles v. Frank*, 101 F. App'x 634, 635 (7th Cir. 2004).

For the reasons described above, the prison's attempts to curb drug use and drug trafficking are legitimate penological objectives. *See O'Lone v. Est. of Shabazz*, 482 U.S. 342, 348 (1987) (legitimate objectives include deterrence of crime, rehabilitation, and institutional security). Mr. Martinez does not contest that the prison's restrictions were implemented for that purpose, and the defendants have introduced evidence that the limitations on religious attendance prevent "gang related activity," and prisoners "gain[ing] access to other offenders for improper purposes." [DE 57-2, ¶ 10]. The uncontested evidence suggests a "rational connection" between the restrictions and these legitimate penological interests. *Turner,* 482 U.S. at 89. Therefore, summary judgment is appropriate on this claim.

For these reasons, the court:

(1) DENIES the defendants' motion for summary judgment (ECF 57) as to his claim for injunctive relief permitting him to possess sage, bitterroot, osage, and cedar, as required by RLUIPA;

(2) GRANTS the motion (ECF 57) as to all other claims; and

(3) DISMISSES defendants Mike Schultz, Brian Blummer, and Marvin Walton.

SO ORDERED.

July 26, 2021                                              *s/ Damon R. Leichty*
                                                            Judge, United States District Court